Filed 4/24/25  P. v. Juarez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B335513 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A037924) |
| v. | |
| ALEX JUAREZ, | |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Los Angeles County, James D. Otto, Judge.  Affirmed.

California Appellate Project, Nancy Gaynor and Sydney Banach, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1987, then 18-year-old Alex Juarez pleaded guilty to one count of second degree murder for his role in aiding and abetting the killing of Sandra La Fountain. The trial court sentenced Juarez to 15 years to life in prison.

More than 30 years later, Juarez filed a petition for resentencing pursuant to Penal Code[1] section 1172.6. After appointing counsel and holding an evidentiary hearing, the trial court denied the petition. We affirmed the denial on appeal. (*People v. Juarez* (Nov. 30, 2021, B311226) [nonpub. opn.] (*Juarez*).) Juarez then filed another section 1172.6 petition for resentencing. The court denied this second petition without appointing counsel or holding a hearing, concluding that Juarez was "abus[ing] . . . the petition process."

Juarez now asks us to reverse the summary denial of his second resentencing petition. The Attorney General concedes the trial court erred by failing to appoint counsel for Juarez, but urges the error was harmless because the doctrine of collateral estoppel bars Juarez's successive petition. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 956 (*Farfan*) [error in summarily denying section 1172.6 petition is harmless unless the petitioner demonstrates "a reasonable probability that the outcome of the proceeding would have been . . . different had the . . . court appointed counsel"].)

Juarez counters that collateral estoppel does not apply here because (1) the prosecution produced key evidence in the case— a recording of detectives' interview of Daniel Saucedo, allegedly an eyewitness to the murder—only after the hearing on Juarez's first resentencing petition, and (2) after the court denied Juarez's first petition, the substantive law governing youthful offenders in

---

[1] Subsequent statutory references are to the Penal Code.

section 1172.6 proceedings changed. Juarez contends further that applying collateral estoppel principles in this case would run counter to public policy considerations by "incentiviz[ing] the withholding of damaging evidence."

We conclude, however, that Juarez has not met his burden of demonstrating a reasonable probability that the court would not have denied his second petition had it appointed counsel and received argument against application of the collateral estoppel doctrine. (See *Farfan, supra,* 71 Cal.App.5th at p. 956.) The prosecution produced a police report summarizing the Saucedo interview years before the hearing on Juarez's first resentencing petition, and Juarez attempts no showing that the recording of the Saucedo interview differs in any material respect from the police report's summary. The changes in substantive law to which Juarez points concern only *implied* malice, whereas the court here determined, in its order denying Juarez's first resentencing petition after a hearing pursuant to section 1172.6, subdivision (d)(3), that Juarez harbored *express* malice. And we are not persuaded that public policy considerations counsel against the application of collateral estoppel in Juarez's case.

Accordingly, we affirm.

## FACTUAL SUMMARY AND PROCEDURAL HISTORY[2]

In September 1987, the district attorney charged Juarez with the murder of La Fountain (§ 187, subd. (a)). At Juarez's preliminary hearing, investigating detective Roland Drouin testified that he had conducted recorded interviews of two eyewitnesses to the murder: Daniel Saucedo and Julio Garcia.

---

[2] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

3

According to Detective Drouin, Saucedo stated during his interview that he saw La Fountain in her car near the corner of 254th Street and Petroleum Avenue in Harbor City. As La Fountain approached the corner, she waved money in the air, attracting the attention of a group of young men. The group, which included Juarez, surrounded the car and attempted to take the money. Saucedo told Detective Drouin that he saw Juarez stab La Fountain once or twice, and that another man, Clemente Estrada, then fired one round from a handgun at La Fountain. Detective Drouin testified that Garcia had provided a substantially identical description of the murder.

During his testimony, Detective Drouin refreshed his recollection with two police reports (one corresponding to each eyewitness) documenting his interviews with Saucedo and Garcia. On cross-examination, Officer Drouin conceded that the police reports do not consist of verbatim transcriptions of the interview recordings, but testified that the reports do reflect the "main ingredients" of the interviews.

The prosecution also called Saucedo and Garcia to testify at the preliminary hearing. Each denied witnessing the murder or participating in any interviews with law enforcement.

At the conclusion of the hearing, the parties stipulated that La Fountain's autopsy established she had suffered a single, nonfatal stab wound to the back and a fatal gunshot wound to the left side of her chest. The prosecutor argued that the evidence demonstrated that Juarez was guilty of La Fountain's murder "under an aider and abettor theory," arguing further that an "aider's and abettor's liability extend[s] to the natural and reasonable consequences of acts he knowingly and intentionally aided or encouraged." The trial court held Juarez to answer on the murder charge.

4

In October 1987, Juarez pleaded guilty to one count of second degree murder. Juarez's counsel stipulated to a factual basis for the plea "based upon [his] reading of the police reports and preliminary hearing transcript[ ]." In addition, Juarez personally agreed at the plea hearing that he had aided and abetted La Fountain's murder:

"[Prosecutor]: Mr. Juarez, is it true on August 2, 1987, you aided and abetted in the crime of murder; that is, the unlawful killing of a human being with malice aforethought, that being Sandra La Fountain . . . , a human being? Is that true, sir?

"[Juarez]: Yes."

Thirty years later, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) " 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) As a result, except as permitted under the felony murder doctrine (see § 189), "in order to be convicted of murder, a principal in a crime shall act with malice aforethought," which "shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The Legislature, however, left intact liability for directly aiding and abetting another in committing murder with express malice. (See *People v. Curiel* (2023) 15 Cal.5th 433, 462.)

Senate Bill No. 1437 also added section 1172.6, which provides a procedure whereby "convicted murderers who could not be convicted under the law as amended" may petition to have their convictions vacated and be resentenced on any remaining counts.

5

(*Lewis, supra,* 11 Cal.5th at p. 959.) If a section 1172.6 petition contains all the required information, including "[a] declaration by the petitioner that the petitioner is eligible for relief," the trial court must appoint counsel, if requested (§ 1172.6, subds. (b)(1)(A) & (b)(3)); the prosecutor must "file and serve a response" to the petition, to which the petitioner may reply (§ 1172.6, subd. (c)); and "[a]fter the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid.*)

If the petitioner has demonstrated a prima facie case, the court must issue an order to show cause and hold an evidentiary hearing at which the prosecution bears the burden of proving, beyond a reasonable doubt, that the petitioner is guilty of murder under California law as amended by Senate Bill No. 1437. (§ 1172.6, subds. (d)(1) & (d)(3).)

In January 2019, Juarez filed a petition for resentencing pursuant to section 1172.6. The court appointed counsel to represent Juarez, and the prosecution filed an opposition to the petition.

In addition to the section 1172.6 petition, Juarez filed a discovery request for "[a]ll reports and witness statements, and recordings prepared relating to the [murder]"—including the recordings of the Saucedo and Garcia interviews, which the prosecution had not previously disclosed. (Boldface omitted.) The trial court granted the motion. At the discovery compliance hearing on October 27, 2020, the prosecution did not produce the recordings and reported it could not locate any further discovery responsive to Juarez's request.

On February 22, 2021, the trial court held a hearing on Juarez's section 1172.6 resentencing petition and determined that he had made a prima facie case for relief. That same day, the court

held an evidentiary hearing on the petition. The prosecution presented no new evidence at the hearing, relying instead on the record of conviction.

Juarez testified on his own behalf. He said that on the night of the murder, he and several others approached La Fountain's car, expecting she would want to buy drugs. La Fountain appeared "jittery," as if she were under the influence of drugs, and was leaning forward toward the steering wheel. She asked, "Can I get something for 50?" Someone else said, "Where is the money at?" La Fountain asked to see the drugs before she produced her money. At that point, a glass bottle hit La Fountain's car. La Fountain jerked backwards into Juarez's pocketknife, which he had been holding "inside of the car." Someone pulled Juarez away from the car, and he walked away from the scene. Juarez testified that he did not hear a gunshot and was not aware that La Fountain had been killed until he was arrested.

The court took the matter under submission and denied the petition in a subsequent written ruling, explaining that it "did not find much of [Juarez's] testimony credible." The court concluded further that it was "persuaded that the People have proved and could have proved to a jury beyond a reasonable doubt that [Juarez] was guilty of murder as a 'major participant' who acted with 'reckless indifference to human life' and that [Juarez] harbored an intent to kill when he aided and abetted the murder of Sandra La Fountain." It therefore denied Juarez's section 1172.6 resentencing petition. On appeal, we affirmed the denial. (See *Juarez, supra*, B311226.)

Following the denial of his resentencing petition, Juarez, representing himself, filed a habeas petition again seeking discovery from the prosecution. At the November 9, 2022 hearing on the habeas petition, the prosecutor gave all discovery in the

7

possession of his office and the Los Angeles Police Department—including the recording of detectives' interview with Saucedo—to Juarez's representative.[3]  The court advised Juarez at the hearing: "If you wish to, based on the new discovery, try and make a case for it or file some other resentencing petition or habeas petition, you have to file it.  Okay?  We don't have anything pending."

On September 5, 2023, Juarez filed a second section 1172.6 petition.  The petition consisted only of a preprinted form on which Juarez had checked boxes attesting to his eligibility for section 1172.6 relief.  Thus, although facially valid, the petition failed to identify any purportedly new facts or changed conditions that might support Juarez's filing of a new resentencing petition.

The court summarily denied this second section 1172.6 petition without appointing counsel for Juarez, explaining: "After . . . [an] evidentiary hearing[,] this court [previously] found that . . . [Juarez] was guilty of murder as a 'major participant' who acted with 'reckless indifference to human life' and that [Juarez] harbored an intent to kill when he aided and abetted the murder of Sandra La Fountain.  Accordingly, [Juarez's first section 1172.6] petition was denied.  [Juarez] . . . seeks to take a second bit[e] at the apple without showing any basis for such.  This is an abuse of the petition process."

Juarez timely appealed.

---

[3] The parties do not explain, and the record does not disclose, why the Saucedo interview recording was not previously produced to Juarez.  According to a declaration from the Los Angeles Police Department detective assigned to collect the discovery, no copy of the Garcia interview recording could be located.

## DISCUSSION

The parties agree, as do we, that the trial court erred by failing to appoint counsel for Juarez before denying his second section 1172.6 petition. (See § 1172.6, subd. (b)(3) ["if the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner" in connection with a facially valid petition].) The parties dispute, however, whether the error was prejudicial. (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1239 (*Beaudreaux*) [failure to appoint counsel in section 1172.6 proceedings subject to harmless error review].)

The Attorney General contends that the court's failure to appoint counsel was harmless because the doctrine of collateral estoppel[4] bars Juarez's second section 1172.6 petition. (See *Beaudreaux, supra,* 100 Cal.App.5th at p. 1239 [collateral estoppel principles, which prohibit " ' " 'relitigat[ion of] identical issue[s],' " ' " barred the defendant's resentencing petition].) As a result, the Attorney General urges, there is no "reasonable probability that the outcome of the proceeding would have been . . . different had the [trial] court appointed counsel." (*Farfan, supra,* 71 Cal.App.5th at p. 956.)

Juarez does not contest the Attorney General's assertion that the threshold requirements for application of the collateral estoppel doctrine are met here. (See *Beaudreaux, supra,* 100 Cal.App.5th at p. 1240.) He contends, however, that the doctrine nonetheless does not apply, in light of (1) the newly available Saucedo interview recording, and (2) appellate decisions postdating his first

---

[4] Although the modern term for collateral estoppel is issue preclusion, we refer to the doctrine as collateral estoppel to be consistent with the terminology used by the parties. (See *People v. Jimenez* (2024) 103 Cal.App.5th 994, 997, fn. 3.)

resentencing hearing "recognizing the relevance of a defendant's youth to the determination whether he acted with malice." (See *United States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 616 (*Arroyo*) ["[c]ollateral estoppel does not apply where there are changed conditions or new facts [that] did not exist at the time of the prior judgment, or where the previous decision was based on different substantive law"].) Juarez contends further that applying collateral estoppel principles in this case would run counter to public policy considerations.

We do not find Juarez's contentions persuasive. First, Juarez fails to demonstrate that the belated disclosure of the Saucedo interview recording constitutes a "new fact[ ]" or "changed condition[ ]" sufficient to preclude application of collateral estoppel. (See *Arroyo*, *supra*, 69 Cal.App.4th at p. 616.) Juarez concedes that he possessed a copy of the police report summarizing the Saucedo interview prior to the hearing on his first resentencing petition, and Juarez does not assert that the recording of the interview differs in any material respect from the police report's summary. Nor has Juarez requested that we receive the recording—which is not part of the trial court or appellate records—as evidence on appeal, to enable us to review the recording ourselves in evaluating his claim of prejudice. (See Cal. Rules of Court, rule 8.252(c)(1) ["[a] party may move that the reviewing court take evidence"].) All that is available to us in the appellate record is an image of a compact disc labeled "Daniel Saucedo." Juarez thus has not met his burden of demonstrating a reasonable probability that, if the trial court had appointed counsel and heard argument concerning the Saucedo interview recording, the court would not have summarily denied the second resentencing petition. (See *Farfan*, *supra*, 71 Cal.App.5th at p. 956.)

10

Second, the recent appellate authorities to which Juarez points discuss the relevance of a defendant's youth in section 1172.6 proceedings only with respect to whether the defendant acted with (1) reckless indifference to human life, or (2) *implied* malice—i.e., with disregard for life and with knowledge that the conduct endangers the life of another. (See *Jimenez, supra,* 103 Cal.App.5th at p. 1007; *People v. Pittman* (2023) 96 Cal.App.5th 400, 413.)[5] These decisions reason that a trial court should consider a defendant's age in determining whether the defendant harbored one of the aforementioned mental states because "youth is relevant to a criminal defendant's ability to perceive [the] risk[s] and consequences" of his or her conduct. (*Pittman, supra,* 96 Cal.App.5th at p. 417; see *Jimenez, supra,* 103 Cal.App.5th at pp. 1003–1004 [discussing *Pittman* with approval].)

Here, however, the trial court found in its order denying Juarez's first section 1172.6 petition that Juarez acted with *express*

_____

[5] Juarez also cites to *People v. Hardin* (2024) 15 Cal.5th 834, 846 [noting the Legislature's consideration of scientific evidence that neurological development continues into a person's mid-20s], *Miller v. Alabama* (2012) 567 U.S. 460, 465 ["mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments' "], and *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1361 ["*Miller* requires a trial court, in exercising its sentencing discretion, to consider the 'distinctive attributes of youth' and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders' before imposing life without parole on a juvenile offender"].) None of these authorities, however, involves a section 1172.6 resentencing proceeding. And Juarez has forfeited any argument premised on *Miller* or *Gutierrez*, as those decisions predated the filing of his first resentencing petition by several years.

malice—i.e., the intent to kill. Because a defendant who acts with express malice intends that his or her conduct result in death, a finding of express malice does not clearly implicate the same concerns that arise when evaluating whether a youthful defendant's perception of risk supports a finding of implied malice. Juarez points to no authority requiring a court to consider youth when determining whether a defendant acted with express malice. And in the absence of such authority, we decline to extend the reasoning in *Pittman* and *Jimenez* to the court's finding of express malice here.

Third, and finally, we are not persuaded that public policy considerations counsel against application of the collateral estoppel doctrine in this case. (See *Farfan*, *supra*, 71 Cal.App.5th at p. 950 ["[a]pplication of collateral estoppel is not automatic, but is subject to public policy considerations"].) Juarez urges that applying the doctrine here, where the prosecution belatedly produced the Saucedo interview recording, would "incentivize[ ] the withholding of damaging evidence." But as set forth, *ante*, Juarez has not attempted any showing that the Saucedo interview recording differs materially from the timely disclosed summary of that interview. The record therefore does not support that this case involves an effort by the prosecution to withhold damaging evidence.

Accordingly, Juarez demonstrates no prejudice from the trial court's summary denial of his second section 1172.6 petition. We therefore affirm.

12

## DISPOSITION

The September 14, 2023 order denying Juarez's second section 1172.6 petition is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

M. KIM, J.

13